Joseph John FRANCIS, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–93–01028–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Sept. 14, 1995.

Georgianne Spiller, Houston, for appellant.

Alan Curry, Houston, for appellee.

Before LEE, AMIDEI and EDELMAN, JJ.

## OPINION

EDELMAN, Justice.

Joseph John Francis appeals his conviction for delivery of a controlled substance on the grounds that: (1) the evidence was insufficient to sustain his conviction; (2) prospective jurors were excluded on the basis of race; and (3) appellant was denied assistance of counsel during an adversarial proceeding. We affirm.

On February 10, 1993, Officer L.P. Boutte of the Houston Police Department was working undercover at a motel known for drug trafficking. While there, appellant approached him, and asked him for a ride to a nearby neighborhood. Officer Boutte told him that he was not going to that neighbor-

hood, but was going to phone his girlfriend and purchase a rock of crack cocaine for her.

Appellant told Officer Boutte that he would sell him a rock of cocaine if he could get a "pinch" [1] off it. Officer Boutte agreed, and asked to see the cocaine. Appellant informed Officer Boutte that another person was actually holding the cocaine, and the two men walked to another location at the motel where the other man was. Appellant told this man that Officer Boutte was a friend who wanted to purchase a rock of crack cocaine, and the transaction was completed. At appellant's reminder, Officer Boutte gave him a "pinch" off the rock of cocaine.

Officer Boutte then walked to a telephone booth, informed officers waiting nearby that he had conducted a narcotics transaction, and drove away. When the arrest team arrived at the motel, appellant and several others were arrested.

Appellant plead "not guilty" to the charge of delivery of a controlled substance, and "not true" to an enhancement paragraph alleging a previous conviction for delivery of a controlled substance. In November of 1993, a jury found appellant guilty as charged, and the trial court made a finding of true on the enhancement paragraph and sentenced appellant to seventeen years in prison.

In the first three of his six points of error, appellant argues that the evidence was insufficient to prove that: (1) he possessed or intentionally and knowingly delivered the cocaine; (2) the cocaine sold to the officer was linked to appellant; or (3) appellant offered to sell cocaine.[2]

When reviewing the sufficiency of evidence to sustain a conviction, we must determine whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781,

---

1. The term, "pinch," was not defined in the record.

2. Delivery of a controlled substance can be accomplished either by actual or constructive transfer, or by an offer to sell. TEX.HEALTH & SAFETY CODE ANN. § 481.002(8) (Vernon 1992). In

this case, since the trial court granted appellant's motion for instructed verdict on the allegation that he offered to sell the cocaine to Officer Boutte, and the jury was not charged on that allegation, we need not review the sufficiency of the evidence on that theory of delivery.

2788–89, 61 L.Ed.2d 560 (1979); *Saxton v. State,* 804 S.W.2d 910, 914 (Tex.Crim.App. 1991). When a general verdict is returned and the evidence is sufficient to support a finding of guilt under any theory alleged in the indictment, the verdict will be upheld. *Fuller v. State,* 827 S.W.2d 919, 931 (Tex. Crim.App.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 3035, 125 L.Ed.2d 722 (1993).

■ In this case, the judgment reflected that appellant had been found guilty of delivery, by actual transfer, of cocaine. The jury had been charged that it could convict appellant of delivery under the law of parties if, acting with intent to promote or assist the commission of the offense, appellant solicited, encouraged, directed, or aided other persons in committing the transfer. See TEX.PENAL CODE ANN. §§ 7.01 & 7.02(a)(2) (Vernon 1974). The jury returned a general verdict of "guilty" as charged in the indictment.

Appellant argues that he could not be convicted of a transfer of the cocaine because he was never in possession of it. *See Conaway v. State,* 738 S.W.2d 692, 695 (Tex.Crim.App. 1987). However, the *Conaway* opinion specifically states that the defendant *could* have been convicted of actual delivery based only on proof of constructive delivery if the jury had been charged on the law of parties, but was not. *Id.* at 694. In this case, unlike *Conaway,* the jury *was* charged on the law of parties. Thus, if the evidence was sufficient to support a finding that appellant, either as the actor or a party, delivered drugs to Officer Boutte, we must affirm the conviction.

Viewed in the light most favorable to the prosecution, the evidence showed that appellant told Officer Boutte that he would sell him a rock of crack cocaine if the officer would give him a "pinch" of it for his part in the transaction. Appellant then took the officer to the person who had actual possession of the cocaine, and told that person that the officer was a friend who wanted to purchase a rock of cocaine. In appellant's presence, the officer purchased cocaine from the individual. Appellant then reconfirmed his participation in the transaction by requesting the agreed upon "pinch" of cocaine.

This evidence is sufficient to show that appellant acted with the intent to promote or assist the other individual's actual transfer of the cocaine to Officer Boutte, and that appellant solicited, encouraged, directed and aided the other individual in actually making that transfer. *See Lacy v. State,* 782 S.W.2d 556, 558 (Tex.App.—Houston [14th Dist.] 1989, no pet.). Accordingly, appellant's first three points of error are overruled.

■ In his fourth point of error, appellant claims that the trial court erred in not sustaining his objection to the State's use of peremptory challenges to exclude black venire members from the jury. *See Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

■ The Equal Protection Clause of the United States Constitution prohibits a prosecutor from using the State's peremptory challenges to exclude otherwise qualified and unbiased persons from a jury solely by reason of their race. *Powers v. Ohio,* 499 U.S. 400, 409–10, 111 S.Ct. 1364, 1370, 113 L.Ed.2d 411 (1991). This is because racial discrimination in the selection of jurors casts doubt on the integrity of the judicial process, and places the fairness of the criminal proceeding in doubt. *Id.* at 411–12, 111 S.Ct. at 1371. This equal protection claim can be raised by the defendant. *Id.* at 415, 111 S.Ct. at 1373.

■ In order to do so, the defendant must first make a prima facie showing that the prosecutor exercised peremptory challenges on the basis of race. *Hernandez v. New York,* 500 U.S. 352, 358–60, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991). If the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. *Id.* In this context, a race-neutral explanation means one based on something other than the race of the juror. *Id.* It must relate to the particular case to be tried, but need not rise to the level justifying exercise of a challenge for cause. *Batson,* 476 U.S. at 97, 98, 106 S.Ct. at 1723, 1724.

■ Moreover, the explanation need not be persuasive, or even plausible. *Purkett v. Elem,* —— U.S. ——, ——, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995). The issue

here is the facial validity of the prosecutor's explanation. *Id.* Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race-neutral. *Id.*

The trial court must then determine whether the defendant has carried his burden of proving purposeful discrimination. *Hernandez,* 500 U.S. at 359, 111 S.Ct. at 1866. There will seldom be much evidence bearing on that issue, and the best evidence will often be the demeanor of the attorney who exercises the challenge. *Id.* at 365, 111 S.Ct. at 1869.

Factors which may show that the prosecutor's explanation for a peremptory challenge is merely a pretext include that: (1) the reason given is not related to the facts of the case; (2) there was a lack of questioning or meaningful questions to the challenged juror; (3) disparate treatment, i.e., persons with the same or similar characteristics as the challenged juror were not struck; (4) disparate examination of venire members, i.e., questioning a challenged juror to evoke a certain response without asking the same question of other panel members; and (5) an explanation based on a group bias where the trait is not shown to apply to the challenged juror specifically. *Whitsey v. State,* 796 S.W.2d 707, 713–14 (Tex.Crim.App.1989).

Since the trial judge's findings turn largely on evaluation of credibility, a reviewing court should ordinarily give those findings great deference. *Hernandez,* 500 U.S. at 364, 111 S.Ct. at 1869. A trial court's finding on the issue of discriminatory intent should not be overturned unless its determination was clearly erroneous. *Id.* at 369, 111 S.Ct. at 1871. Where there are two permissible views of the evidence, the trial court's choice between them cannot be clearly erroneous. *Id.* at 369–70, 111 S.Ct. at 1871–72.

Once the prosecutor has offered a race-neutral explanation for the peremptory challenges, and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot. *Id.*

In this case, six of the forty members of the venire panel were black. The State peremptorily struck seven panel members, of whom three were black. Appellant, who is black, struck one black. Another black venireperson had been struck for cause, and the remaining one, who was not struck, was not reached. Thus, no blacks were among the thirteen people on the jury panel and alternate position.

After the jury was selected, appellant requested a *Batson* hearing, and the prosecutor gave the following reasons for striking the black panelists:

> Juror No. 3, Laverne Crump, State would like to note that they waited over 25 minutes for her to return to the courtroom after being told to wait outside. Also she stated she would hold people to the past and under oath she expects no one to lie. Juror No. 4, Quintan Adams, is currently unemployed. Also stated under oath he would believe any testimony under oath. Juror No. 7, Allen Williams, seemed to have questions about the law, delivery; very argumentative concerning portions, especially concerning money may not be exchanging hands. Also stated on the record he wants to know the prior history of the Defendant before he can render any guilt or innocence decision. Also state for the record a prior offense would not be considered by him to effect [sic] credibility under any circumstance.

In reply to these explanations, appellant's counsel stated that she disagreed with the panel members' answers and the prosecutor's interpretation of them, and asked that the State's notes be admitted as part of the record to indicate the prosecutor's reasons for striking. Appellant's counsel did not otherwise rebut the prosecutor's explanations, and her *Batson* challenge was overruled.

Both the appellant and the State are allowed to raise, for the first time on appeal, arguments to rebut or support, respectively, the race-neutral explanations given at trial, provided that the evidence necessary to support those arguments was developed in the record. *Young v. State,* 856 S.W.2d 175, 177 (Tex.Crim.App.1993); *Young v. State,* 826

S.W.2d 141, 146 (Tex.Crim.App.1991). On appeal, appellant argues that the prosecutor's explanations were not related to this case, and that they mischaracterized the panel members' answers. In addition, as to Mr. Williams, appellant asserts that other jurors who had questions about the law were not struck by the prosecutor.

The record reflects that, in reply to appellant's question whether she would discount appellant's testimony because he had a prior drug conviction, Ms. Crump stated "if he's testifying under oath, I would be more inclined to believe him," "you can't hold people to their past ...," and "the past doesn't really have an effect unless his behavior is erratic...."

In response to the same question, Mr. Adams said, "[w]ell, seems obvious that you would believe a person's testimony under oath. I guess I am inclined to believe his testimony."

The record reflects that Mr. Williams asked several questions, and spoke in the middle of the prosecutor's answers to his questions. When asked if he could make a decision on guilt/innocence knowing that he would not assess punishment, Mr. Williams said, "[w]ell, I would want to know the record of this, you know, what happened in the past, you know. I have to know a lot of things about it before I can. I would like to assess punishment before, but I would like a past record."

In reply to appellant's question whether he would discount a witness' testimony because he had a drug conviction, Mr. Williams first said, "I would listen to their testimony. I think it would probably color my perception a little bit." However, on further inquiry, he said, "I would listen, make up my mind, wouldn't have no bearing."

After reviewing the record and arguments, we believe a close issue is presented. Six of the forty venire panel members, or 15 percent, were black. The prosecutor used three of her seven peremptory strikes, or 42 percent, to strike black panel members. More-

over, the prosecutor's notes contain a circled "B" next to the names of the black panel members. These facts suggest that race was a factor in the prosecutor's exercise of strikes.

On the other hand, in order to sustain appellant's point of error, we must conclude that a discriminatory intent was inherent in the prosecutor's explanations. *Purkett*, —— U.S. ——, 115 S.Ct. at 1771.

▮▮▮ For each black panel member whom the prosecutor peremptorily struck, at least one arguable race-neutral justification was given. Ms. Crump's tardiness, for example, may have suggested to the prosecutor that she did not listen to the court's instructions, or take them seriously. As to Mr. Adams, peremptory challenges based on unemployment have been upheld. *See, e.g., Lemon v. State*, 837 S.W.2d 163, 168–69 (Tex.App.—El Paso 1992), *rev'd on other grounds*, 861 S.W.2d 249 (Tex.Crim.App.1993); *Silva v. State*, 800 S.W.2d 912, 914–15 (Tex.App.—San Antonio 1990, no pet.). As to Mr. Williams, perceived hostility toward a prosecutor can be a non-discriminatory reason for exercising a peremptory challenge against a prospective juror. *See Alexander v. State*, 866 S.W.2d 1, 8 (Tex.Crim.App.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1869, 128 L.Ed.2d 490 (1994); *see also Tennard v. State*, 802 S.W.2d 678, 682 (Tex.Crim.App. 1990), *cert. denied*, 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed.2d 1077 (1991).

Similarly, although the prosecutor's characterizations of these panel member's responses were not particularly accurate, it must be recognized that the prosecutor had to work from limited notes jotted quickly in a small space. Moreover, with one exception,[3] the characterizations were consistent with the prosecutor's notes, and the discrepancies were not great enough to amount to a pretense on their face. *See, e.g., Straughter v. State*, 801 S.W.2d 607, 614 (Tex.App.—Houston [1st Dist.] 1990, no pet.).

---

3. According to the statement of facts, the prosecutor said that Ms. Crump stated that she *would* hold people to the past, whereas the prosecutor's notes indicate that she *"wld not* hold ppl to their

past" (emphasis added). There is no indication in the record whether this discrepancy was due to a transcription error, a speaking error by the prosecutor, or otherwise.

Appellant has noted that, unlike Mr. Williams, several white venire panel members who had questions about the law were not struck. However, disparate treatment cannot automatically be imputed in every situation where one of the State's reasons for striking a venireperson would technically apply to another whom the State chose not to strike. *Adanandus v. State*, 866 S.W.2d 210, 224–25 (Tex.Crim.App.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1338, 127 L.Ed.2d 686 (1994). "Where, as here, the State has offered numerous race neutral reasons for its challenge, we cannot say that the fact that there were other acceptable jurors possessing one or more of these objectionable attributes is sufficient to establish disparate treatment." *Id.* at 225.

After considering all of the circumstances, and although the issue is a close one, we are not convinced that the trial court's decision on appellant's *Batson* challenge was clearly erroneous. Accordingly, appellant's fourth point of error is overruled.

In his fifth and sixth points of error, appellant claims that he was denied assistance of counsel at his probable cause hearing and "preliminary initial appearance hearing" ("PIA hearing").

A complaint was filed against appellant on February 10, 1993. On February 12, a probable cause hearing was held. Appellant also appeared before a magistrate that day, and was given statutory warnings, including that he had the right to retained or appointed counsel. *See* TEX.CODE CRIM.PROC.ANN. art. 15.17 (Vernon Supp.1992). Appellant refers to this appearance as the PIA hearing. Counsel was also appointed for appellant on February 12. None of these proceedings were transcribed, and it appears, but is not clear, from the record that they occurred in the order stated. It also appears, and appellant acknowledges, that bail·was not set at the PIA.

Appellant argues that his constitutional right to counsel attached upon the filing of the complaint. *See State v. Frye*, 897 S.W.2d 324, 328 (Tex.Crim.App.1995) (Court has not declared "bright line rule" for determining when right to counsel commences; with regard to misdemeanor charges, right attaches when State files misdemeanor complaint); *McCambridge v. State*, 778 S.W.2d 70, 76 (Tex.Crim.App.1989), *cert. denied*, 495 U.S. 910, 110 S.Ct. 1936, 109 L.Ed.2d 299 (1990). Therefore, he contends that the failure to appoint counsel to represent him at the probable cause and PIA hearings violated his constitutional right to counsel.

Both the United States and Texas Constitutions guarantee the accused the right to assistance of counsel in all criminal prosecutions. U.S. CONST. amend. VI.; TEX. CONST. art. I, § 10; *see also* TEX.CODE CRIM. PROC.ANN. art. 1.05, 1.051 (Vernon 1977 & Supp.1995). This right attaches only at or after the initiation of adversary proceedings against the defendant. *United States v. Gouveia*, 467 U.S. 180, 187, 104 S.Ct. 2292, 2297, 81 L.Ed.2d 146 (1984). However, not every event following the inception of adversary judicial proceedings is a "critical stage" invoking the right to counsel. *Green v. State*, 872 S.W.2d 717, 720 (Tex.Crim.App. 1994). A pre-trial proceeding is only "critical" if the accused requires aid in coping with legal problems, or assistance in meeting his adversary. *Id.; United States v. Ash*, 413 U.S. 300, 313, 93 S.Ct. 2568, 2575, 37 L.Ed.2d 619 (1973).

In *Green*, at a "preliminary initial appearance" before a magistrate, the appellant was given his warnings under Article 15.17(a), and a finding of probable cause was made, but bail was not set. 872 S.W.2d at 718. The following day, counsel was appointed for him. *Id.* The Court of Criminal Appeals held that the PIA was not a critical stage invoking the right to counsel because: (1) appellant was neither required nor asked to enter a plea of any kind there; (2) the probable cause determination was non-adversarial; (3) an examining trial was neither held at, nor precluded by, the PIA; (4) bail was not set at the PIA; and (5) nothing else happened at the PIA which required the aid of counsel to cope with any legal problem or assist in meeting the prosecutorial adversary. *Id.* at 721–22.

In this case, at the proceedings in issue, appellant was merely given his statutory warnings and probable cause was found to

detain him. As far as the record reflects, each of the factors relied upon in *Green* was also present here. His complaint is, thus, controlled by the holding in *Green* that the right to counsel was not invoked.[4] Accordingly, appellant's fifth and sixth points of error are overruled, and the judgment of the trial court is affirmed.

---

4. Moreover, as a practical matter, little useful purpose would seem to be served by requiring a defendant to be represented by counsel at the hearing at which he is advised of his right to be represented by counsel.