COURT OF APPEALS


EIGHTH DISTRICT OF TEXAS


EL PASO, TEXAS




)

 

ARTHUR LEE WATERS,

)

 No. 08-02-00041-CR

)


 Appellant,

)

 Appeal from

)

 

v.

)

 195th District Court

)


THE STATE OF TEXAS,

)

 of Dallas County, Texas

)


 Appellee.

)

 (TC# F-0153501-KN)



O P I N I O N




 Arthur Lee Waters was charged with two counts of aggravated robbery of a motor vehicle. He
entered a plea of guilty in both cases. The jury found the Appellant guilty as charged and
assessed punishment at ten years and one day imprisonment to be served in the Institutional
Division of the Texas Department of Criminal Justice. On appeal, he complains of Batson error
and the admission of extraneous offenses, neither of which is dependent upon the specific facts of
the case. Consequently, we will dispense with a factual summary. Finding no error, we affirm.

BATSON CHALLENGE


 In Point of Error No. One Appellant argues that the trial court erred in finding that the prosecutor
exercised a peremptory strike on a potential juror for racially neutral reasons. In Batson v.
Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court
announced its mandate that in a criminal cause, a prospective juror may not be peremptorily
challenged solely on the basis of race. Under Batson, the defendant is required to make a
three-pronged showing. The first step requires that the defendant establish a prima facie case
raising an inference of purposeful discrimination on the part of the prosecuting attorney. Brewer
v. State, 932 S.W.2d 161, 164 (Tex.App.--El Paso 1996, no pet.); Belton v. State, 900 S.W.2d
886, 897 (Tex.App.--El Paso 1995, pet. ref'd). As for the second prong, once the accused
establishes a prima facie case of racially motivated strikes, the burden of production shifts to the
State to provide a race-neutral explanation. Emerson v. State, 851 S.W.2d 269, 271-72
(Tex.Crim.App. 1993);Calderon v. State, 847 S.W.2d 377, 382 (Tex.App.--El Paso 1993, pet.
ref'd). In this context, a race-neutral explanation means one based on something other than the
race of the juror. Hernandez v. New York, 500 U.S. 352, 358-60, 111 S.Ct. 1859, 1866, 114
L.Ed.2d 395 (1991); Francis v. State,909 S.W.2d 158, 162 (Tex.App.--Houston [14th Dist.]
1995, no pet.). It must relate to the particular case to be tried, but need not rise to the level
justifying exercise of a challenge for cause. Batson,476 U.S. at 97, 98, 106 S.Ct. at 1723, 1724;
Francis, 909 S.W.2d at 162. Moreover, the explanation need not be persuasive, or even
plausible. Purkett v. Elem, 514 U.S. 765, 767, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995);
Francis, 909 S.W.2d at 162.

 With regard to the third prong, if the prosecutor's explanation is facially valid, the burden of
production shifts back to the accused to establish by a preponderance of the evidence that the
reasons given were merely a pretext for the State's racially motivated use of its peremptory
strikes. Salazar v. State, 818 S.W.2d 405, 409 (Tex.Crim.App. 1991); Calderon, 847 S.W.2d at
382. The defendant must do more than simply state his disagreement with some of the State's
explanations; he must prove affirmatively that the State's race-neutral explanations were a sham
or pretext. Davis v. State, 822 S.W.2d 207, 210 (Tex.App.--Dallas 1991, pet. ref'd); Straughter v.
State, 801 S.W.2d 607, 613 (Tex.App.--Houston [1st Dist.] 1990, no pet.). In other words, the
challenging party must prove purposeful discrimination. Baker v. Sensitive Care-Lexington
Place Health Care, Inc., 981 S.W.2d 753, 755 (Tex.App.--Houston [1st Dist.] 1998, no pet.).

 In reviewing Batson issues in criminal cases, the courts apply the clearly erroneous
standard.Emerson, 851 S.W.2d at 273; Vargas v. State, 838 S.W.2d 552, 554 (Tex.Crim.App.
1992); Davis, 822 S.W.2d at 210. We will review the record in its entirety and consider the voir
dire process, including the make-up of the venire, the prosecutor's explanation, and the
defendant's rebuttal and impeachment evidence. Whitsey v. State, 796 S.W.2d 707, 726
(Tex.Crim.App. 1989)(opinion on reh'g); Davis, 822 S.W.2d at 210. Further, the record is
examined in the light most favorable to the trial court's rulings. Williams v. State, 804 S.W.2d
95, 101 (Tex.Crim.App.), cert. denied, 501 U.S. 1239, 111 S.Ct. 2875, 115 L.Ed.2d 1038 (1991);
Davis, 822 S.W.2d at 210. It is incumbent upon Appellant to provide a record illustrating that the
trial judge's findings are clearly erroneous.Williams, 804 S.W.2d at 101; Mata v. State, 867
S.W.2d 798, 805 (Tex.App.--El Paso 1993, no pet.); see also Hill v. State, 827 S.W.2d 860, 865
(Tex.Crim.App. 1992); Wyle v. State, 836 S.W.2d 796, 797 (Tex.App.--El Paso 1992, no pet.). 
Under the "clearly erroneous" standard, we may only reverse if a review of the voir dire record,
the State's explanations, the composition of the jury panel, and Appellant's rebuttal and
impeachment evidence results in a definite and firm conviction that a mistake has been made. 
Whitaker v. State, 977 S.W.2d 869, 874 (Tex.App.--Beaumont 1998, no pet.). 

 Where the trial court finds no prima facie case, it is imperative that the challenging party include
in the record evidence establishing that the challenged veniremembers were members of a
protected class, together with a demonstration of the make-up of the jury panel as a whole. 
Where, as here, the trial court proceeds to a hearing on the Batson issue, the prima facie case has
already been sustained and a presumption of discrimination arises. At that point, further evidence
on the jury panel's background becomes unnecessary. Dominguez v. State Farm Ins. Co., 905
S.W.2d 713 (Tex.App.--El Paso 1995, writ dism'd by agr.). Thus, where the State offers an
explanation for the challenged strike and the trial court makes its ruling, the issue of whether the
defendant presented a prima facie case is moot. Hernandez, 500 U.S. at 359, 111 S.Ct. at 1866,
114 L.Ed.2d at 406. Instead, the facial validity of the prosecutor's explanation becomes the
central issue. Purkett, 115 S.Ct. at 1771; Francis, 909 S.W.2d at 162. As a result, an appellate
court bypasses the first prong and moves directly to the second prong. Unless a discriminatory
intent is inherent in the prosecutor's explanation, the reason offered will be deemed race-neutral. 
Id.

 Here, Appellant argues that the State used a peremptory challenge to prevent a black person,
Juror No. 32, from sitting on the jury. Appellant complains of the trial court's ruling which
accepted the prosecutor's explanation that the veniremember "had a bad juror rating." The
following colloquy occurred:

 THE COURT: Let the Record reflect that the Defendant, Arthur Lee Waters, is
African-American; that among the 42 prospective jurors -- well, actually, there were fewer than
that because some had been agreed on. But we went through Number 42, Mr. Limon. Within
that group there were six African-Americans and five Hispanic-Americans.



 The Defendant struck Number 42, who was Hispanic. The State struck four, all of them
African-Americans, Number 22, Number 32, Number 37, and Number 41.



 Does either side wish to make a Batson challenge?



 MR. ROBERTS: We would, Your Honor, yes.



 THE COURT: You believe the State has stricken those four because of racial reasons?



 MR. ROBERTS: We'd like an explanation.



 THE COURT: All right.



 MR. HOPPING: Your Honor --



 MR. ROBERTS: Can I have those numbers again?



 THE COURT: 22, 32, 37, and 41.



 MR. HOPPING: Your Honor, I believe most of the four jurors -- 22 said that the most important
punishment was rehabilitation. 32 had a bad juror rating. 37 said rehabilitation, and her brother
was in the pen for capital murder. 39 -- or 41 said that there were lots of innocent people in
prison and cited rehabilitation as a reason. 



 The State also struck everyone that said rehabilitation was a primary reason of punishment. The
State also struck 8, which was a white male, who stated rehabilitation. 13, Melissa Garza, the
State struck her because of rehabilitation. 35, another white male, the State struck for those purposes.



 THE COURT: All right. Mr. Roberts, do you wish to cross-examine the Prosecutor?



 MR. ROBERTS: No, sir.

 

 THE COURT: The Court rules that the reasons cited by the State show that there was no racial
discrimination, and that that was not the purpose of any of the State's strikes. The reasons stated
are all racially neutral.



 Thus, we must determine whether the prosecutor's explanation that Juror No. 32 was stricken
because he had a "bad juror rating" establishes juror discrimination. We first note that this case
has been transferred to us under the Supreme Court's docket equalization procedure. It was tried
in Dallas County and prosecuted by the Dallas County District Attorney's Office. Although the
record here does not establish what a "bad juror rating" is, or the methodology by which a juror is
rated, prior opinions of the Dallas Court of Appeals have explained it, as the following excerpt demonstrates:



 At the hearing following abatement, the prosecutor testified that, based on information received
from her investigator, she struck Ms. Watson because the district attorney's office had Ms.
Watson listed as a bad juror in a prior case. The prosecutor explained that the district attorney's
office keeps a book with a list of jurors who were exceptionally good or bad jurors in prior cases. 
The list contains the jurors' names, addresses, and the type of case involved but gives no reason
for the classification. When asked for some of the reasons that a person would be listed as a bad
juror, the prosecutor responded, 'When they find a case not guilty, when they give a weak
punishment.' The prosecutor further explained that she gives a list of the venire panel to her
investigator who then checks to see if anyone on the list has a criminal record or is listed in the
jury book. If a venireperson is listed in the book, the investigator places either a 'B,' 'F,' or 'G' by
that person's name to indicate whether they were previously a bad, fair, or good juror. In this
case, a 'B' appeared beside Ms. Watson's name.



Webb v. State, 840 S.W.2d 543, 545 (Tex.App.--Dallas 1992, no pet.). Finding the explanation
race-neutral, the court concluded that the burden had shifted to Webb to prove affirmatively that
the prosecutor's explanations were a sham or pretext. Id. The "bad juror rating" system was
again held to be a race-neutral explanation for striking a prospective juror in Bausley v. State, 997
S.W.2d 313, 316 (Tex.App.--Dallas 1999, pet. ref'd). We recognize, of course, that in Webb the
prosecutor detailed the process by which jurors were rated and in Bausley, the court found the
trial court had erred in denying Bausley's request to question the prosecutor who had rated the
juror in his earlier jury service. We do not have the benefit of such details here and, indeed, it is
the absence of these details that Appellant challenges. However, the juror rating system has been
determined to be a facially neutral explanation. Once the State provided a race neutral
explanation for its strike, the defendant must do more than simply state his disagreement with
some of the State's explanations; he must prove affirmatively that the State's race-neutral
explanations were a sham or pretext. Davis, 822 S.W.2d at 210; Straughter v. State, 801 S.W.2d
607, 613 (Tex.App.--Houston [1st Dist.] 1990, no pet.). The burden to rebut the State's race
neutral explanation is substantial, and often there is little evidence to show purposeful
discrimination. See Mandujano v. State, 966 S.W.2d 816, 821 (Tex.App.--Austin 1998, pet.
ref'd). It is essential that the opponent of the strike be given the opportunity to demonstrate that
the State's race neutral explanations are untrue or pretextual. Yarborough v. State, 947 S.W.2d
892, 906 (Tex.Crim.App. 1997)(Baird, J., dissenting). 

 Here, when the court asked defense counsel whether he wanted to cross-examine the prosecutor,
defense counsel replied, "No, sir." The court gave Appellant every opportunity to inquire about
the rating system, the methodology employed, the rating Juror No. 32 had received in his prior
service and the reasons why. But he declined to do so. Since Appellant did not pursue the
challenge, he has not presented a record illustrating that the trial court's findings are clearly
erroneous. Consequently, we overrule Point of Error No. One.

EXTRANEOUS OFFENSES

 In Point of Error No. Two, Appellant complains that the trial court admitted extraneous offenses 
without pre-determining whether the offenses had been proven beyond a reasonable doubt. We
review a trial court's decision to admit an extraneous offense during the punishment phase under
the abuse of discretion standard. Mitchell v. State, 931 S.W.2d 950, 953 (Tex.Crim.App. 1996).
During the punishment phase, the State may offer evidence as to any matter the court deems
relevant to sentencing, including evidence of an extraneous crime or bad act that is shown beyond
a reasonable doubt to have been committed by the defendant or for which he could be held
criminally responsible. Tex.Code Crim.Proc.Ann. art. 37.07, § 3(a)(1)(Vernon Supp. 2003). 
When presented with an appropriate objection, the trial court has the responsibility to determine
the threshold issue of whether an extraneous offense is relevant. See Mitchell, 931 S.W.2d at
953-54;Mann v. State, 13 S.W.3d 89, 94 (Tex.App.--Austin 2000), aff'd, 58 S.W.3d 132
(Tex.Crim.App. 2001). Then the jury, as the exclusive fact finder, is to determine whether or not
the State has proved the extraneous offenses beyond a reasonable doubt, and they should be so
instructed when requested. Mitchell, 931 S.W.2d at 954.

 Here, the State presented evidence from Sean Hodge, a close friend of Appellant's, who
explained how he and Appellant had stolen cars on many occasions in order to go joyriding. 
Hodge described how they would break the windows and alter the steering column mechanism,
drive around for a few hours, then just park the cars and walk away. Neither Hodge nor
Appellant were ever charged with any of these offenses. Defense counsel objected that the
stories could be fabrications. He also argued that the State had to prove an extraneous offense
beyond a reasonable doubt before it was admissible. We disagree.

 It is clear from the record that the court found the extraneous offenses to be relevant to
punishment and the jury was properly instructed that it must find the offenses to have been
committed beyond a reasonable doubt for it could consider them in determining an appropriate
punishment. Point of Error No. Two is overruled. Having overruled both points of error, we
affirm the judgment of the trial court.





February 13, 2003 

 ANN CRAWFORD McCLURE, Justice



Before Panel No. 4

Barajas, C.J., Larsen, and McClure, JJ.



(Do Not Publish)