Gregory O'Neal FRAZIER, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–94–00198–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 12, 1995.

Richard L. Manske, El Campo, for appellant.

W.C. Kirkendall, Seguin, for appellee.

Before HUDSON and EDELMAN, JJ., and ELLIS[1], J. (Assigned).

## OPINION

EDELMAN, Justice.

Gregory O'Neal Frazier appeals his conviction for two counts of delivery of a controlled substance on the ground that the trial court erred in denying his *Batson* challenge. We affirm.

Following voir dire at appellant's trial, the State peremptorily struck both black members of the jury panel, Ms. Hurd and Ms. Banks. Before the jury was empaneled, appellant, who is black, moved to have the court

determine if the State's strikes were impermissibly based on race. *See Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). After conducting a *Batson* hearing, the court ruled that the State's strikes were not based on race. In his sole point of error, appellant claims that the trial court erred in overruling his *Batson* challenge.

The Equal Protection Clause of the United States Constitution prohibits a prosecutor from using peremptory strikes to exclude otherwise qualified and unbiased persons from a jury solely by reason of their race. *Powers v. Ohio,* 499 U.S. 400, 409, 111 S.Ct. 1364, 1370, 113 L.Ed.2d 411 (1991). Racial discrimination in the selection of jurors is prohibited because it casts doubt on the integrity of the judicial process, and places the fairness of the criminal proceeding in doubt. *Id.* at 409, 111 S.Ct. at 1369–70.

To raise this equal protection claim, the defendant must first make a prima facie showing that the prosecutor exercised peremptory challenges on the basis of race. *Hernandez v. New York,* 500 U.S. 352, 359–60, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991). Once a movant makes a prima facie case, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. *Id.*

In this context, a race-neutral explanation simply means one based on something other than the race of the juror. *Id.* It must relate to the particular case to be tried, but need not rise to the level justifying exercise of a challenge for cause. *Batson,* 476 U.S. at 96–97, 106 S.Ct. at 1723. Moreover, the explanation need not be persuasive, or even plausible. *Purkett v. Elem.,* —— U.S. ——, ——, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995). The issue is the facial validity of the prosecutor's explanation. *Id.* Unless a discriminatory intent is inherent in that explanation, the reason offered will be deemed race neutral. *Id.*

Once a race-neutral reason is given, the trial court must determine whether the defendant has carried his burden of proving

1. Former Justice George T. Ellis sitting by assignment.

purposeful discrimination. *Hernandez,* 500 U.S. at 359–60, 111 S.Ct. at 1866. There will seldom be much evidence bearing on that issue, and the best evidence will often be the demeanor of the attorney who exercises the challenge. *Id.* at 364–66, 111 S.Ct. at 1869. Factors the trial court may consider to determine whether the prosecutor's explanation for a peremptory challenge is merely a pretext include:

(1) the reason given is not related to the facts of the case;

(2) there was a lack of questioning or meaningful questions to the challenged juror;

(3) disparate treatment, i.e., persons with the same or similar characteristics as the challenged juror were not struck;

(4) disparate examination of venire members, i.e., questioning a challenged juror to evoke a certain response without asking the same question of other panel members; and

(5) an explanation based on a group bias where the trait is not shown to apply to the challenged juror specifically.

*Whitsey v. State,* 796 S.W.2d 707, 713–14 (Tex.Crim.App.1989).

■ Since the trial judge's finding turns largely on an evaluation of credibility, a re-

viewing court should ordinarily give those findings great deference. *Hernandez,* 500 U.S. at 364–66, 111 S.Ct. at 1869. A trial court's finding on the issue of discriminatory intent should not be overturned unless its determination is clearly erroneous. *Id.* at 368–69, 111 S.Ct. at 1871. Where there are two permissible views of the evidence, the trial court's choice between them cannot be clearly erroneous. *Hernandez,* 500 U.S. at 368–71, 111 S.Ct. at 1871–72.

■ In the case before us, Mr. Follis, the prosecutor, stated he struck Ms. Hurd because she was employed by Richmond State School and was in charge of duties that essentially made her a social worker. The prosecutor explained that in his past experiences, employees of that school and other people engaged in that type of work tended to be too lenient on defendants.[2] On its face, this explanation, although stereotypical, was race-neutral.

Appellant argues that the prosecutor's reason was a pretext because it was not based on anything *Ms. Hurd* said or did, but on a perception of *other* employees of that facility. Appellant contends that the prosecutor thus "violated" two of the *Whitsey* factors by not asking meaningful questions of Ms. Hurd,[3]

---

2. The record from the *Batson* hearing, reads as follows:

MR. FOLLIS: The juror, Joyce Hurd, according to her information form, is a program manager for the Richmond State School and that caused me to question her about her duties. She testified that the programs that she manages had to do with personal care of the persons who are housed at Richmond State School.

In previous life, I was an Assistant District Attorney in Fort Bend County were Richmond State School is and I know Richmond State School to be an institution for persons who suffer from mental handicaps and disabilities of some sort. During my tenure as Assistant District Attorney in Fort Bend County I had occasion to have persons on jury duty several times from Richmond State School.

Basically Ms. Hurd, according to her testimony, is a social worker and performs duties as such at Richmond State School and my experience has been that persons who engage in that sort of work, however laudable their work may be and it certainly is, are not preferable State's jurors because they tend to find the defendants to be not operating under their own influences but other

influences and factors beyond their control and things of that nature that require people such as Ms. Hurd to give them help and care and that is not the kind of juror I would want. I would want a juror (sic) who would believe that a person is responsible for their own conduct and responsible for their own actions and my experience has been, specifically with persons from Richmond State School(sic), that is not(sic) the belief of those persons. And it is for that reason and that reason solely that I struck Ms. Hurd, not withstanding that she is a member of a minority race.

3. During the voir dire the prosecutor's only questioning of Ms. Hurd was as follows:

MR. FOLLIS: And what are your duties—
JUROR: I am a program manager. I monitor everything to make sure they are—
MR. FOLLIS: What kind of program, like treatment care?
JUROR: It is like domestic care, personal care, laundry, and types of programs like that; interview programs; in relation to all programs.
MR. FOLLIS: Are you actually involved in the care yourself or have you been in your career?

and by striking her based on a group bias which was not shown to apply to her specifically. Appellant asserts that the presence of such *Whitsey* factors tends to show that the State's reasons are not supported by the record or are an impermissible pretext.

■ Appellant is correct that the presence of *Whitsey* factors *tends* to show pretext. Indeed, the failure to show how a bias applies directly to a venireperson "will weigh heavily against the legitimacy of any race-neutral explanation." *Keeton v. State,* 749 S.W.2d 861, 866 (Tex.Crim.App.1988). However, the presence of *Whitsey* factors does not establish conclusively that the stated reasons were a pretext. The State may base peremptory challenges on a prosecutor's legitimate hunches and past experiences so long as racial discrimination is not the motive. *Id.* at 865.

■ In several cases, group traits not shown to apply directly to stricken jurors have nevertheless been held to be sufficient racially-neutral reasons and not pretext. In *Tompkins,* for example, the court upheld a prosecutor's strike against a black postal employee where the prosecutor had not had "very good luck with postal employees" even though the prosecutor did not elaborate on her evident bias against such employees. 774 S.W.2d at 205. *See also Emerson v. State,* 851 S.W.2d 269, 272 (Tex.Crim.App. 1993) (upholding a prosecutor's strike of a nurse on the theory that a nurse might recommend to other jurors that medical testimony should be introduced in a sexual assault trial); *Silva v. State,* 800 S.W.2d 912, 915 (Tex.Civ.App.—San Antonio 1990, no writ) (upholding a prosecutor's strikes based

on the theory that unemployed or younger people are less likely to be prosecution-minded); *York v. State,* 764 S.W.2d 328, 331 (Tex. App.—Houston [1st Dist.] 1988, writ ref'd) (upholding a strike based on the prosecutor's hunch that social workers were not the type of jurors a prosecutor wanted and a strike of a truck driver based on the prosecutor's personal experiences with truck drivers).

Based on these cases, we cannot say that a trial court's denial of a *Batson* challenge is clearly erroneous solely because a prosecutor struck a venireperson for a group bias not shown to apply directly to the stricken juror. Instead, the trial court must make a credibility determination from all the facts and circumstances of the voir dire.

■ In this case, there was no evidence that there were other social workers who were not struck,[4] that black venire members were otherwise treated differently than other panel members,[5] or that black members were asked questions not asked of the other venire members. Moreover, after the prosecutor offered his reasons for the peremptory strikes, the court offered appellant's trial counsel an opportunity to cross-examine the prosecutor, but he declined.

Had he instead elected to do so, he might, for example, have asked how many cases the prosecutor had actually tried where school workers or social workers were jurors, how they voted in those cases, and the extent to which post-trial interviews indicated that the philosophy he attributed to the class actually existed and had any effect on their votes. With such questioning, he might have been able to impeach the prosecutor's credibility

JUROR: Yes.
MR. FOLLIS: Thank you, ma'am.
The prosecutor then, also briefly, asked other jurors about their kind of work and whether anyone had any questions. After the State's conclusion, appellant's counsel then began his voir dire. Appellant's counsel only asked Ms. Hurd the following:
MR. MORRIS: ....Ms. Hurd
JUROR: Yes.
MR. MORRIS: Are you still working at the Richmond State School?
JUROR: Yes.

4. In *Emerson v. State,* 851 S.W.2d 269 (Tex.Crim. App.1993), not only was the group trait not

shown to apply directly to the struck juror, but the juror's occupation was not even established in the record and other jurors who shared that characteristic were not struck. *Id.* at 272, 274.

5. At the *Batson* hearing, the prosecutor gave several reasons for striking Ms. Banks including that she knew appellant, that she felt uncomfortable convicting someone based on someone else's word, and that she would have a problem with testimony from a paid informant. Appellant has not challenged the striking of Ms. Banks or asserted that the striking of both black panel members was based on a pattern of discriminatory intent. *See Batson,* 476 U.S. at 96–97, 106 S.Ct. at 1723.

and convince the trial judge (or appeals court) that the prosecutor's reasons were a pretext.[6]

As the case stands, however, we are without a sufficient basis to find that the trial court's decision was clearly erroneous. Accordingly, we affirm the judgment of the trial court.

**6.** Anticipating the possibility of a *Batson* challenge, appellant's trial counsel might have also attempted to voir dire the black jury panel members to establish a lack of bias.